# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LENNOX EMANUEL,

    Plaintiff,

v.                                                      Case No. 13-13175

COUNTY OF WAYNE, *et al.*,

    Defendants.

                                                           /

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending before the court is a Motion for Summary Judgment filed by Defendants County of Wayne and Wayne County Sheriff Officers Assad Turfe, Jason Mathews, and Sheri Tanner on March 9, 2015. (Dkt. # 29.) The court held a hearing on May 11, 2015. For the reasons stated below, the court will grant the motion.

## BACKGROUND

On September 28, 2011, Plaintiff was briefly arrested and cited with Receiving and Admitting for the Act of Prostitution, a misdemeanor, in violation of Detroit City Code 38-9-4. His vehicle was impounded pursuant to the Michigan Nuisance Abatement laws. On March 20, 2013 the charges were dismissed without prejudice. Plaintiff brought this action on July 24, 2013, alleging various constitutional violations pursuant 42 U.S.C. § 1983. The misdemeanor charges were then reissued, and Plaintiff was ultimately found not guilty in a bench trial.

The factual circumstances surrounding the arrest are sharply in dispute.

### A. Plaintiff's Version

On September 28, 2011, Plaintiff was driving around in the area of Derby and Remington, with no particular destination. (Dkt. # 29-4, Pg. ID 284.) He happened upon a woman, who he didn't know by name, but recognized by sight. This woman,

whose name is Leiann Gross, was an acquaintance of Plaintiff's friend and client Raina Blasius. Plaintiff had heard that Blasius had been murdered in the area, which was a high prostitution area and was seeking information. Although he had never spoken to her before, Plaintiff recognized Gross from having seen her speak with Blasius, so he stopped to speak with her about Blasius's murder. (*Id.* at 285)

Plaintiff and Gross spoke briefly[1] before Gross entered his vehicle and they proceeded to the De Lido Motel on Woodward Ave, roughly five minutes away. (*Id.* at 286.) Plaintiff asserts that they drove to the motel because it was better lit and therefore safer than the location where he picked up Gross. Plaintiff stopped in the motel's parking lot, where the two continued to speak about Blasius.

After fifteen to twenty minutes, a police car pulled up behind Plaintiff's vehicle with lights flashing. (*Id.* at 288.) Defendants Mathews and Turfe exited the police car and ordered Plaintiff and Gross out of the vehicle. (*Id.*) Mathews ordered Plaintiff to stand near the rear of the vehicle and Gross to stand near the front. (*Id* at 289.) Mathews searched the vehicle without Plaintiff's permission. (*Id.* at 288.)

For about ten minutes Mathews and Turfe ran checks on Plaintiff's ID and completed paperwork as well as conversed with Plaintiff and Gross (*Id.* at 289.) Mathews then asked Plaintiff, "by the way, what do you do for a living," to which Plaintiff replied "I'm an attorney." (*Id.*) Mathews relayed this information to Turfe who replied, "arrest him." Plaintiff was then read his Miranda rights and handcuffed. Turfe began to question Plaintiff, but Plaintiff did not respond or make any admissions. (*Id.* at 289-90.)

Ultimately Plaintiff was cited for Receiving and Admitting for the Act of Prostitution and released. (*Id.* at 291.) Gross, who only spoke with Mathews, was never handcuffed, but was also cited. (*Id.* at 292.) A tow truck came for Plaintiff's car,

---

[1] Plaintiff alternately testified that the discussion was "a couple of minutes" and "maybe seconds." *Compare* Dkt. # 29-4, Pg. ID 285 *with Id.* at 286.

which was impounded.  The entire encounter lasted approximately thirty minutes.  (*Id.* at 293.)  Gross walked away, and Plaintiff waited for a taxi.  (*Id.* at 294.)

In response to the instant motion for summary judgment, Plaintiff has submitted an affidavit sworn by Gross and dated January 28, 2015.  (Dkt. # 32-2, Pg. ID 416-17.)  In it, she denies having admitted to being a prostitute or to otherwise admitting illegal activity to Defendants.

## B. Defendants' Version

Defendants were working as part of a special operations task force morality unit for the Wayne County Sheriff's department.  (Dkt. # 29, Pg. ID 195.)  The unit's purpose was to conduct surveillance for complaints of prostitution and narcotics.  Defendant Tanner and Officer Woods were in a vehicle conducting surveillance in the area of John R St. between Six Mile and Eight Mile. Tanner parked on Derby St., a half block south of the intersection with Remington Ave.  (Dkt. # 29-2, Pg. ID 250.)  She observed Gross walking back and forth on Remington, flagging vehicles and making eye contact with drivers as they passed.  (*Id.* at 251).  Tanner knew Gross was a prostitute, because Tanner had issued multiple prostitution tickets to Gross in the past.

Tanner observed Plaintiff's vehicle pass her, driving northbound on Derby.  (*Id.* at 252.)  Gross approached the passenger side of the vehicle and entered the car, which then turned right onto Remington and made a right onto John R.  Tanner radioed her partners with her observations and followed the vehicle.  Tanner noted that the vehicle did not signal its turn at Derby and Remington.  The vehicle turned right onto State Fair Ave. and then right onto Woodward Ave.  (*Id.* at 253.)  Tanner observed the vehicle enter the parking lot for the De Lido Motel.  Tanner continued north on Woodward past the motel and parked on a side street.

Defendant Mathews was in a marked police car.  (Dkt. # 29-3, Pg. ID 267.)  Upon hearing Tanner's observations, he began to follow Tanner's vehicle, but lagged behind.

3

(*Id.*) Defendant Turfe was conducting surveillance from another vehicle and observed Plaintiff's vehicle enter the motel parking lot. (Dkt. # 29-1, Pg ID 235.) After three to four minutes, both officer Mathews and Turfe pulled into the motel parking lot and initiated an investigatory stop. (*Id.*) Mathews approached the driver's side and asked Plaintiff to exit the vehicle and then conducted a pat down. (Dkt. # 29-3, Pg. ID 267.) Plaintiff provided identification but did not answer any questions at this point. (*Id.* at 268)

While Mathews was speaking with Plaintiff, Turfe approached the passenger side, pulled Gross out of the vehicle, and advised her of her Miranda Rights. (Dkt. # 29-1, Pg ID 236.) Gross then told Turfe that she and Plaintiff drove to the De Lido Motel to have sex for money, but hadn't yet negotiated exactly how much money Plaintiff was going to pay her. (*Id.* at 236-37.) Mathews and Turfe then compared notes and Turfe proceeded to place Plaintiff in custody and advised him of his Miranda Rights. (*Id.* at 237.) Gross then repeated her confession to Mathews, adding that she knew Plaintiff well and had had sexual intercourse with Plaintiff on multiple occasions. (Dkt. # 29-3, Pg. ID 268.)

Plaintiff then confessed to Turfe, admitted he knew Gross was a prostitute and that he had driven her to the motel to have sex. (Dkt. # 29-1, Pg ID 237.) Mathews proceeded to write out citations for both Plaintiff and Gross based on the confessions. (Dkt. # 29-3, Pg. ID 271.) The tickets were signed by Tanner. (Dkt. # 29-2, Pg. ID 255-56.)

### C. Subsequent Proceedings

On March 20, 2013, the charges were dismissed without prejudice because the officers failed to appear. (Dkt. # 29-9, Pg. ID 321-22.) On October 2, 2013 (after this lawsuit was filed), the charges were reinstated. A bench trial was held on April 7, 2014 and June 20, 2014. Neither the People nor Plaintiff called Gross at trial. Judge Miriam

4

Martin-Clark found Plaintiff not guilty, stressing that the People had "not proven their case beyond the high standard of reasonable doubt." (Dkt. # 29-14, Pg. ID 349.)

### D. The Instant Action

Plaintiff commenced this action on July 24, 2013 with a four-count complaint alleging (1) 42 U.S.C. § 1983 violations by Turfe, Mathews, and Tanner, who allegedly violated Plaintiff's rights (A) to procedural and substantive due process and fair treatment during investigation, (B) to be free of unlawful entry and search of property under the Fourth Amendment of the United States Constitution, (C) to be free from arrest without probable cause, (D) to be free from malicious/wrongful prosecution, and (E) to be free from humiliation and harassment; (2) 42 U.S.C. § 1983 violations by Turfe and John Doe Wayne County Sheriff Department Supervisors for failure to supervise; (3) 42 U.S.C. § 1983 violation by Wayne County for failure to train; and (4) Michigan State Law gross negligence against Turfe, Mathews, and Tanner.  This action was administrative closed during the pendency of the charge against Plaintiff on February 19, 2014 (Dkt. # 14) and reopened on August 8, 2014 after his acquittal (Dkt. # 18). Defendants now move for Summary Judgment.  (Dkt. # 29.)

On May 26, 2015, Plaintiff filed a voluntary Chapter 7 Bankruptcy petition. Michael A. Stevenson, the Trustee, appeared in this action on July 6, 2015.  At a status conference held on the record on July 27, 2015, the parties agreed that Stevenson, as Trustee, has assumed responsibility for managing the prosecution this action. Accordingly, Stevenson explicitly adopted the filings made by Plaintiff after the commencement of the bankruptcy action and acknowledged that the instant motion is ripe for disposition.

### II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

6

answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

### A. Failure to Disclose

Defendants argue that Federal Rule of Civil Procedure 37(c) mandates that the Gross affidavit be stricken because it was not disclosed by Plaintiff during discovery. Rule 37(c) provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c). By its terms, this rule only applies to initial disclosures under Rule 26(a) and supplemental disclosures under Rule 26(e). Plaintiff complied, including Gross in both his Preliminary Witness List (Dkt. # 23) and Final Witness List (Dkt. # 28). As such, the court is not required by Rule 37 to exclude the affidavit.

However, The Gross affidavit, as a witness statement, was the subject of a discovery request, and was never produced during discovery. During the hearing on the instant motion, the court questioned Plaintiff on why he did not disclose the affidavit until he filed his response to the Motion for Summary Judgment. Plaintiff admitted that he had an obligation to disclose the affidavit but argued that the belated disclosure did not prejudice Defendants.

7

Based on the non-production, the court sanctioned Plaintiff, ordering him to produce Gross for a deposition, and warned that "[f]ailure to comply may persuade the court to strike the Gross Affidavit." (Dkt. # 41, Pg. ID 559.) Plaintiff failed to produce Gross, stating that he "visited the location where the Defendants listed her as residing and where [he] initially contacted her and found that the house has been burned to the ground" and that he would "not be producing Ms. Gross . . . ." (Dkt. # 42, Pg. ID 562.) Plaintiff asserted that he had no further contact information for Ms. Gross. (*Id.*)

Upon consideration, the court will strike the Gross affidavit. As Plaintiff is unable to locate Gross, he cannot create a triable issue of fact as to whether she confessed. Without her testimony at trial, all that would remain is the uncontroverted testimony from Officers Turfe and Mathews that Gross confessed. Plaintiff was admittedly not within earshot of the confessions and is therefore incompetent to challenge their testimony. Without Gross's live testimony, subject to proper cross-examination, Plaintiff can only offer inadmissible hearsay that Gross did not confess.

### B. Probable Cause

Plaintiff's Fourth Amendment § 1983 claims against the individual defendants turn on whether the officers had probable cause to arrest and cite him. "[A]rrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). "A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Id.*

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable

8

caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "In the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 581 (6th Cir. 2003)

Officer Turfe testified that the arrest was "based on the statement that [he] received from LeeAnn Gross." (Dkt. # 29-1, Pg. ID 237.) The statement, uncontroverted in light of the court's decision to strike the Gross Affidavit, provides ample probable cause for Plaintiff's arrest.[2] This is the only reasonable determination on the record that remains.

Defendants' fallback argument is that probable cause existed even without the confession. Although the court need not, and does not, reach this question in light of its determination that the Gross Affidavit must be stricken, it notes in passing that the Sixth Circuit has found, in *Alman v. Reed*, 703 F.3d 887, 899 (6th Cir. 2013), a case based upon an undercover sting operation, that the record did not clearly enough show defendant's intention to solicit sexual activity, therefore a finding of probable cause for solicitation was not properly founded. "[T]he error here was holding that probable cause 'existed as a matter of law,' based only on the admitted fact some degree of genital touching." *Id.* at 906 (Boggs, J., concurring in part and dissenting in part). In *Alman*, a male undercover police officer engaged the male plaintiff in sexually flirtatious conversation in a public park. *Id.* at 893 (majority opinion). Plaintiff briefly touched the

---

[2]Plaintiff's alleged confession is irrelevant to the probable cause analysis, as Turfe testified that the confession occurred only *after* Plaintiff's arrest and thus was not known to Defendants at the time of the arrest.

officer's genitals through his pants and was arrested for, *inter alia*, solicitation. *Id.* at 896. The Sixth Circuit reversed the District Court's grant of summary judgment because "there [was] nothing in the record that evince[d] [an intention to solicit a lewd act in a public place]." *Id.* at 899.

Here, there is circumstantial evidence of Plaintiff's intention to solicit a prostitute, admitting her into the confines of an automobile for purposes of prostitution, including at least these facts: 1) that the area was known undisputedly as one in which prostitution was rampant, 2) that Gross was known to be a prostitute, acting in a manner that suggested she was plying her trade (walking back and forth, flagging down cars), and 3) that the De Lido Motel was a location known as frequently used to conduct prostitution. However, analogizing to *Alman,* albeit a case with vastly more complicated and contested facts, it may be argued that a reasonable officer "would have needed more evidence of [Plaintiff's] intentions before concluding that he was inviting" Gross to engage in sex for money. *Id.* Absent Gross's confession, therefore, Defendants would arguably have lacked probable cause to arrest Plaintiff. Ultimately, however, the court does not reach this issue; nor does it decide the significance of *Alman* to this case, in view of the distinctive factual circumstances in which *Alman* arose and was decided.

The portion of the first cause of action based on malicious prosecution, however, would not survive even without Gross's confession. The record is devoid of any indication that Defendants influenced or participated in the prosecution of the misdemeanor charges. *See McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005). In fact, the officers were not aware of the trial and did not appear on the original trial date.

10

## C. Qualified Immunity

Even had the court declined to strike the Gross Affidavit, Defendants would be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To defeat Defendants' claim of qualified immunity, then, Plaintiff must demonstrate not only that the facts shown "make out a violation of a constitutional right," but also that "the right at issue was 'clearly established' at the time of [Defendants'] alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

If Defendants arrested Plaintiff without probable cause because Gross never confessed, the court would then "assess[] whether it was clearly established that a reasonable officer would not find probable cause" in these circumstances. *Legenzoff v. Steckel*, 564 F. App'x 136, 141 (6th Cir. 2014). Even where probable cause is lacking, "officials are entitled to qualified immunity [when] their decision was *reasonable*, even if mistaken." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995) (alteration in original).

In this case, the undisputed facts (less Gross's confession) fall slightly short of probable cause. However, it cannot be said that Plaintiff's actions—approaching and picking up a known prostitute and driving her to a motel known for being a frequent site for prostitution—did not lead the officers to *believe* that probable cause existed. Even accepting Plaintiff's assertion that Gross never confessed, the court finds that

11

Defendants' belief that probable cause existed was reasonable. As such, the individual defendants are entitled in the alternative to qualified immunity on the Fourth Amendment claim.

### D. Failure to Supervise

The second cause of action alleges that Defendant Turfe is liable under § 1983 for failure to supervise. However, the undisputed testimony establishes that then-Officer (now Sergeant Turfe) was not in a supervisory capacity during the relevant time period. Sergeant Merrow was the sole supervisory member of the team. (Dkt. # 29-2, Pg. ID 249.) Plaintiff has made no attempt to expand this case to substitute Merrow for the unnamed Doe Defendants and as such, the second cause of action must be dismissed.

### E. Failure to Train

Plaintiff alleges that Wayne County is liable for deliberate indifference by failing to train its police officers to properly establish probable cause prior to making arrests. "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id. at* 390-91.

Plaintiff has developed no evidence about Wayne County's training. Instead, he posits that Wayne County's vested financial interest in "rapacious and unsupported seizures of vehicles" amounts to a "clear" custom and practice. Plaintiff offers several "examples" of other individuals whose vehicles he alleges were wrongfully seized pursuant to Nuisance Abatement law after citations for solictation. (Dkt. # # 36-2--37-4.) However, although one individual's case was dismissed for the failure of officers to appear, there is no evidence whatsoever that his, or any other individual's arrests were unsupported by probable cause. Contrary to Plaintiff's assertions, the dismissals do not establish a policy of probable cause violations. At best, they establish a lack of vigor in prosecution. Without evidence that a single one of the arrests lacked probable cause, Plaintiff's third cause of action must be dismissed.

### F. Gross Negligence

Plaintiff alleges the individual defendants' actions during the course of his arrest were grossly negligent. Under Michigan Law, governmental actors are immune from liability unless the "conduct [was] so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(2)(c). Indeed, if an officer "reasonably believes he or she is acting within the scope of his or her authority," absolute immunity attaches. *Id.* § 691.1407(2)(a).

In light of the court's holding that Defendants reasonably believed that probable cause existed, there cannot be liability for gross negligence. Even absent a finding of qualified immunity, the court would find the undisputed facts do not rise the heightened standard of gross negligence. The fourth cause of action must be dismissed.

### IV. CONCLUSION

IT IS ORDERED that the Gross Affidavit (Dkt. # 32-2) is STRICKEN.

IT IS FURTHER ORDERED Defendants' Motion for Summary Judgment (Dkt. # 29) is GRANTED and the case is DISMISSED.


      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated: August 13, 2015


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 13, 2015, by electronic and/or ordinary mail.

      s/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522